IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VINCENT E. TRIMBLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-1164-SMY-RJD |
| | ) |
| RANDY GROUNDS, DANA TYLKA, | ) |
| SUSAN KERR, DR. JANSSEN | ) |
| WILLIAMS, DR. VIPIN SHAH, and DEE | ) |
| DEE BROOKHART, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Vincent Trimble, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his Eighth Amendment constitutional right to adequate medical care was denied while he was incarcerated at Robinson Correctional Center ("Robinson"). Specifically, Trimble alleges that he suffered from a serious lumbar spine injury and was denied access to the medical gym by Defendants Randy Grounds, Dana Tylka, Dee Dee Brookhart, Susan Kerr, Dr. Janssen Williams, and Dr. Vipin Shah. He also alleges that Dr. Williams and Dr. Shah failed to prescribe adequate pain medication following his January 17, 2014 lumbar surgery.

Before the Court are Defendants Dr. Williams and Dr. Shah's ("the Wexford Defendants") Motion for Summary Judgment (Doc. 86) and Defendants Brookhart, Grounds, Kerr, and Tylka's ("the IDOC Defendants") Motion for Summary Judgment (Doc. 91). Trimble filed Responses to both motions (Docs. 90 and 93). For the following reasons, Defendants Williams and Shah's Motion is **GRANTED in part and DENIED in part**, and Defendants Brookhart, Grounds, Kerr, and Tylka's Motion is **DENIED**.

## Factual Background

Trimble's claims arise from his incarceration at Robinson from August 2012 to November 2014 (Deposition of Vincent Trimble, Doc. 92-1, p. 9). Trimble, who has suffered from back injuries since 1993, underwent an MRI of his lumbar spine on March 15, 2013 (*Id.* at 4; *see* Doc. 87-10 at 1). The MRI revealed that Trimble suffered from a herniated disc at the L3-4 level (Deposition of Dr. Vipin Shah, Doc. 90-1 at 2; *see* Doc. 87-10 at 1). Following this diagnosis, Trimble was in the care of Dr. James Harms, a physician with the Carle Foundation Hospital (*See* Doc. 90-6).

Dr. Harms regularly saw Trimble from May 2013 to June 2014 to address his back condition (*See id.*). On January 17, 2014, Dr. Harms performed a laminectomy at the L3-4 level (Doc. 92-1 at 4; *see* Doc. 90-6 at 25-26). Both before and after surgery, Dr. Harms recommended that Trimble engage in a regular exercise program that would "do something for his flexibility, something for his abdominal and back muscles, and something for his cardiovascular fitness" (*Id.* at 36; Doc. 92-1 at 11, 23). Dr. Harms provided Trimble with a "back owner's manual" that recommended he complete various stretching exercises (*Id.* at 11; *see* Doc. 92-8). In order to complete his exercises, Trimble attempted to access the medical gym, but was often denied access (Doc. 92-1 at 6). Trimble's claims of deliberate indifference relate to the denial of access to the medical gym and denial of certain pain medications prescribed by Dr. Harms following his surgery.

On January 18, 2014, Defendant Dr. Shah approved an order for Vistaril (an anti-anxiety medication) and Robaxin (a muscle relaxant), medications that were prescribed by Dr. Harms (Doc. 87-2 at 10; *see* Doc. 87-10 at 6 and Doc. 90-6 at 28-29). Dr. Shah did not, however, provide an order for Trimble to receive acetaminophen with codeine, which was also prescribed by Dr. Harms (Doc. 92-1 at 6; *see* Doc. 87-10 at 6 and Doc. 90-6 at 29). At some point

following his surgery, Trimble asked Dr. Shah for Tylenol with codeine, but was told that the medication was not allowed at the institution (Doc. 92-1 at 6).

On January 31, 2014, Trimble saw Defendant Dr. Williams for a surgical follow-up examination (Doc. 87-5 at 13; *see* Doc. 87-10 at 8). Dr. Williams prescribed Flexeril (a muscle relaxant) and Lortab (Tylenol with oxycodone) (Doc. 87-5 at 12-13; *see* Doc. 87-10 at 8). Although not documented in his medical records, Trimble testified that he saw Dr. Williams on February 5, 2014, and they discussed his pain medication (Doc. 92-1 at 8). After a review of Dr. Harms' orders, Dr. Williams indicated that Trimble had not been prescribed the amount of medication ordered by Dr. Harms and he would write him a new prescription order; however, Trimble never received the prescribed medication (*Id.*).

At a subsequent follow-up visit on February 19, 2014, Dr. Williams conducted a physical exam and noted there was no pain or tenderness in Trimble's back (Doc. 87-5 at 14). However, Dr. Williams determined Trimble was experiencing neurological pain due to nerve compression, and prescribed Elavil, an anti-depressant used to treat nerve pain (neuropathy) (*Id.* at 14-15; *see* Doc. 87-10 at 10).

Dr. Williams discontinued the Elavil during his March 14, 2014 examination because Trimble was not taking it (Doc. 87-5 at 19; *see* Doc. 87-10 at 17). He last saw Trimble (in relation to the claims in this lawsuit) on April 18, 2014, at which time Trimble requested a renewal of his Flexeril prescription (Doc. 87-5 at 20; *see* Doc. 87-10 at 22). Because Trimble had been taking Flexeril for three weeks and it is not recommended for more than seven days, Dr. Williams denied Trimble's request and prescribed Tylenol for six months instead (Doc. 87-5 at 20; *see* Doc. 87-10 at 22). During one of these follow-up examinations, Trimble asked Dr. Williams for Tylenol with codeine and any other medications prescribed by Dr. Harms that were

not dispensed, but Dr. Williams denied his request and told him that "the institution had the right to deny any orders from outside doctors" (Doc. 92-1 at 8).

Prior to his back surgery, Trimble was issued a pass for the medical gym from August 16, 2013 to November 16, 2013 (Deposition of Dr. Janssen Williams, Doc. 90-2, p. 2). On November 14, 2013, Trimble submitted a request to extend his medical gym pass, but his request was denied by Dr. Williams (Doc. 87-5 at 10; *see* Doc. 87-3 at 5). Dr. Williams was not able to renew Trimble's gym pass without first conducting a physical examination (Doc. 87-5 at 10).

On November 20, 2013, Dr. Lochard, a non-defendant physician, renewed Trimble's pass for the medical gym after conducting a physical examination (Doc. 92-1 at 4; *see* Doc. 87-3 at 4 and Doc. 87-10 at 4). This pass was valid at all times relevant to this lawsuit (*Id.*).

The medical gym at Robinson is held six days per week, one hour per day (Doc. 92-1 at 10). It is held in the standard gym, but is limited to inmates with ADA disabilities or handicaps that impede their ability to use the facilities during standard gym time (*Id.*). The gym includes equipment such as stretch bands, mats, and medicine balls (*Id.*). It is unknown whether all of the equipment available during medical gym is available for the regular gym, but it is held in the same space as there is only one gym unit at Robinson (*Id.*). Trimble never attempted to go to the regular gym because he would not have been able to compete for the equipment and was often using a wheelchair to ambulate (*Id.* at 22-23, 27).

Despite having a valid medical gym pass, Trimble was routinely denied access because he was not on the list. Trimble asked Dr. Shah and Dr. Williams to allow him access to the medical gym, both before and after his January 17, 2014 surgery, but they failed to take any action (*Id.* at 5, 7). He spoke with Dr. Williams on one or two occasions, and spoke with Dr. Shah two or three times about this issue before giving up and writing a grievance complaining about the same on May 1, 2014 (*Id.* at 7-8; *see* Doc. 87-3 at 11). On at least one occasion, Dr.

Williams told Trimble that his condition was not serious enough to be in the medical gym (Doc. 92-1 at 7).

Trimble also brought this issue to the attention of IDOC personnel, including Defendants Warden Randy Grounds, Assistant Warden Dana Tylka, Healthcare Administrator Susan Kerr, and Assistant Warden Dee Dee Brookhart. In particular, Trimble spoke with Warden Grounds in February 2014 and told him that he was being denied access to the medical gym, despite having a valid pass (*Id.* at 18-19). Grounds explained who in the chain of command Trimble should contact, but Trimble indicated he had already spoken to the necessary individuals (*Id.* at 19). Despite hearing Trimble's complaints, Grounds failed to take any action; merely advising Trimble that he should take it up with Susan Kerr or one of his physicians (*Id.* at 19-21).

Sometime between February and May 2014, Trimble spoke with Assistant Warden Tylka on at least three occasions to tell her about the issues with the medical gym, but she also failed to take any action (*Id.* at 20). Instead, Tylka advised Trimble to bring it to the attention of Susan Kerr or one of his physicians (*Id.* at 21). Trimble brought his issue to the attention of Healthcare Administrator Kerr on several occasions, but she failed to take appropriate action (*Id.*).

Trimble received a similar response to his complaints from Assistant Warden Brookhart, whom he spoke with at least three times (*Id.* at 20). Brookhart refused to assist Trimble and to ensure that he received access to the medical gym (*Id.* at 21). She told Trimble to talk to Susan Kerr or take it up with his physicians (*Id.*). Brookhart did, however, review Trimble's May 1, 2014 grievance, and in response, instructed the housing unit staff and Susan Kerr to put Trimble's name on the medical gym list (Deposition of Dee Dee Brookhart, Doc. 93-8 at 4-5). A medical note was charted and signed off by Dr. Matticks on May 7, 2014 indicating that Trimble was to be allowed access to the medical gym (Doc. 87-10 at 23). It is not clear how and when

Trimble's access to the medical gym changed after May 7, 2014 note, but Trimble indicates that he received access "at some point" (Doc. 92-1 at 12-13).

## Discussion

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Trimble asserts that Dr. Shah and Dr. Williams acted with deliberate indifference, in violation of the Eighth Amendment, by failing to provide him the medication prescribed by Dr. Harms following his surgery on January 17, 2014. He Trimble also claims that Dr. Shah, Dr. Williams, Warden Grounds, Assistant Wardens Tylka and Brookhart, and Healthcare Unit Administrator Kerr were deliberately indifferent to his serious medical needs in failing to ensure he had access to the medical gym at Robinson.

The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). As the Supreme

Court has recognized, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the plaintiff must first show that his condition was "objectively, sufficiently serious" and secondly, that "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

The following circumstances are indicative of an objectively serious medical condition: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

An inmate must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. Negligence, gross negligence, or even recklessness are not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that prison officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653.

A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). Where, as here, an inmate sues prison

employees who are not part of the medical staff, deliberate indifference can be shown with evidence that those employees ignored or interfered with a course of treatment prescribed by a physician. *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016) (citation omitted).

### Access to the Medical Gym

The IDOC Defendants contend that because Trimble had access to adequate exercise opportunities in the regular gym and in the yard or dayroom, he was not subjected to an objectively serious deprivation. But Defendants' argument is misses the point. The question before the Court is whether these defendants were deliberately indifferent to Trimble's serious medical needs, not whether Trimble was afforded the basic necessities of civilized life. That Trimble may have been able to access the regular gym is not only disputed, but is also not relevant to whether Defendants acted with deliberate indifference in failing to ensure that Trimble's pass to the medical gym was honored and that Dr. Harms' pre- and post-surgery exercise recommendations were followed.

The evidence in the record clearly establishes that Trimble's back injury was objectively serious insofar as it required surgical repair and significant follow-up with medical staff. The record also provides ample documentation concerning the importance of Trimble engaging in a regular exercise program both before and after his surgery. Indeed, Dr. Harms' post-operative instructions note specifically that "[e]xercise is an important part of achieving the best result after surgery" (Doc. 90-6 at 31), and, in a subsequent entry, stated that "[a] goodly part of the result of surgery depends on an exercise program afterwards" (*Id.* at 36). Trimble testified that he did not have a sufficient alternative to exercising in the medical gym because the regular gym was too crowded, particularly when he needed his wheelchair, and he was not allowed to exercise in the dayroom.

Despite the importance of Trimble engaging in a regular exercise program that included cardiovascular fitness, trunk strengthening, and flexibility, he was unable to engage in such a program because he was routinely denied access to the medical gym. Based on this evidence, a jury could reasonably conclude that Warden Grounds, Assistant Warden Tylka, Assistant Warden Brookhart, Healthcare Administrator Kerr, and Drs. Williams and Shah were deliberately indifferent to Trimble's condition when they ignored his pleas to address his access the medical gym.

Defendants also argue that summary judgment is warranted because Trimble has failed to establish that he suffered any post-surgery harm due to his inhibited access to the medical gym. Defendants rely on Dr. Williams' deposition testimony that Trimble's recovery was not harmed by his inability to go to the medical gym and that overall, his recovery was "very good" (Doc. 92-7 at 26). However, Trimble testified that he "did not get proper rehabilitation" and did not have an opportunity to allow his body to heal properly due to his limited access to the medical gym (*Id.* at 24). Further, Dr. Harms' record from his last appointment with Trimble on June 13, 2014 indicates that although he came through surgery just fine, he still had aches and pains (Doc. 90-6 at 36). Dr. Harms' final recommendation was that Trimble find a way to get regular exercise and eat fruits and vegetables (*Id.*).

Based on Trimble's testimony, Dr. Harms' records and Defendants' failure to ensure his surgeon's orders were followed, a jury could reasonably find that Trimble's recovery was delayed and that he was harmed by his inability to access the medical gym. For these reasons, Defendants are not entitled to summary judgment on Trimble's claim of deliberate indifference as it relates to his access to the medical gym. The Court also rejects the IDOC Defendants' qualified immunity argument. At the time of the events in question, it was clearly established

that ignoring or interfering with a course of treatment prescribed by a physician implicates an inmate's constitutional rights.

## Prescription Medication

The evidence indicates that Dr. Shah provided Trimble with a prescription for some, but not all of the post-surgery medications ordered by Dr. Harms. Dr. Shah issued a prescription for Vistaril and Robaxin, but refused to issue a prescription for Tylenol with codeine. But although Trimble complains that he did not receive Tylenol with codeine, there is no evidence in the record concerning how this affected him or whether this caused him to endure significant or prolonged pain. While Trimble had subsequent complaints of pain, such complaints are likely to occur following surgery *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."). Because Trimble is not entitled to "specific care" or the "best care possible," and Dr. Shah provided prescription medication in an attempt to curb his post-surgical pain, no reasonable jury could find that Dr. Shah's treatment was "blatantly inappropriate." Therefore, he is entitled to summary judgment on Trimble's claim of deliberate indifference related to the provision of pain medication.

The same reasoning applies to Dr. Williams' prescription of medication following Trimble's surgery. Again, Trimble complains that Dr. Williams did not prescribe him certain medications, such as Tylenol with codeine. He also complains that he and Dr. Williams discovered an error in his pain prescriptions that Dr. Williams failed to rectify. The undisputed evidence establishes that Dr. Williams prescribed various medications to address Trimble's complaints of pain, including Flexeril, Lortab, and Elavil. Although Trimble clearly disagreed

with Dr. Williams' treatment decisions, there is no indication that his treatment was "blatantly inappropriate" or that he failed to exercise his professional judgment in addressing Trimble's complaints. For these reasons, Dr. Williams is also entitled to summary judgment on Trimble's claim of deliberate indifference related to the provision of pain medication.

## Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants Grounds, Brookhart, Kerr, and Tylka (Doc. 91) is **DENIED**, and the Motion for Summary Judgment filed by Defendants Dr. Williams and Dr. Shah (Doc. 86) is **GRANTED in part and DENIED in part**. Plaintiff Vincent Trimble shall proceed in this action on a claim of deliberate indifference against all defendants related to the denial of access to the medical gym; however, his deliberate indifference claim against Drs. Williams and Shah related to the denial of pain medication following his January 17, 2014 surgery is subject to summary dismissal.

**IT IS SO ORDERED.**

**DATED: March 23, 2018**

s/ Staci M. Yandle
**STACI M. YANDLE**
**United States District Judge**